UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EUGENE LEE,<br><br>*Plaintiff*,<br><br>v.<br><br>NEW YORK UNIVERSITY,<br><br>*Defendant*. | Civ. No.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Eugene Lee, by and through his undersigned counsel, hereby states his Complaint against Defendant New York University ("NYU") based upon personal knowledge and information and belief:

## INTRODUCTION

1. According to NYU, its Moses Center for Accessibility and Inclusive Culture "works to foster an environment that is equitable and supportive by providing reasonable and appropriate accommodations and promoting disability inclusion and awareness across the NYU community."[1]

2. That is not Eugene Lee's reality. He has not received the reasonable accommodation he needs to thrive as a student with NYU's Dental School.

3. Mr. Lee has ADHD (or Attention-deficit/hyperactivity disorder) and dyslexia, which are secondary to cerebellar-vestibular dysfunction. This physiological disorder in the inner

---

[1] https://www.nyu.edu/life/global-inclusion-and-diversity/centers-and-communities/accessibility.html.

ear, affecting the connection to the cerebellum, impacts his balance, cognitive function, and ability to manage stress during exams.

4. On April 5, 2025, Mr. Lee has requested to sit in the back row to take exams because the quietest place with the least distractions for him is in the last row.

5. NYU has continually denied the request despite multiple letters from Mr. Lee's clinician and the ability to freely contact that clinician.

6. As explained in the clinician's most recent letter, "seating Eugene in the last row is a targeted clinical strategy designed to reduce the most disruptive visual input: movement and activity occurring in his peripheral and ear visual field. These are the areas most likely to trigger sensory overload and attentional dysregulation in individuals with Eugene's neurophysiological profile. . . . When seated in the last row, Eugene's field of view becomes predictably front-facing, minimizing unexpected stimuli from behind and to the sides."

7. Mr. Lee's clinician made clear that "[t]his is not a preference. It is a medically necessary adaptation for someone whose disability involves a compromised ability to neurologically suppress irrelevant stimuli in real time," thereby "reaffirm[ing] that last-row seating is a necessary, functionally linked accommodation to Eugene's disability—not a matter of convenience or generalized discomfort."

8. NYU has rejected the medical judgment of Mr. Lee's clinician.

9. However, institutions are not permitted to override medical judgment or substitute their own beliefs about a condition's needs in place of a qualified clinician's documentation.

10. NYU's actions and inactions violated governing law. For example, NYU must "make reasonable accommodation to the needs of persons with disabilities." N.Y.C. Admin. Code § 8-107(15)(a). NYU's failure to provide back-row seating as an accommodation for Mr. Lee

2

violated city law. His "disability [wa]s known or should have been known." *Id.* Furthermore, every accommodation is "reasonable" as long as it "does not cause undue hardship in the conduct of the covered entity's business," and "[t]he covered entity has the burden of proving undue hardship." *Id.* § 8-102.

11. On June 23, 2025, NYU's Bridget Betts stated that NYU's "decision is not based on any question regarding the validity of [Mr. Lee's] diagnoses or *on concerns related to undue hardship*."

12. Thus, despite city, state, and federal laws requiring academic institutions to foster the success of all students regardless of disability, NYU failed to meet these obligations and instead subjected Mr. Lee to discriminatory treatment. Specifically, NYU has (1) failed to engage in an individualized, interactive process despite updated medical documentation, (2) denied a reasonable accommodation that had previously been effective and medically supported, (3) relied on a blanket academic policy (assigned seating) without considering disability-related needs, (4) improperly referred to the academic department, which is not permitted under disability law, and (5) failed to provide any documented analysis showing that the requested accommodation would fundamentally alter testing procedures.

13. Accordingly, Mr. Lee seeks declaratory, injunctive, and compensatory relief, as well as punitive damages and reasonable attorney's fees and costs, collectively under Title III of the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12181, *et seq.*; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290, *et seq.*; and the New York City Human Rights Law ("NYCHRL"), § 8-101 *et seq.*

## PARTIES

14. Plaintiff Eugene Lee was at all times relevant a resident of New York City and a student with NYU's Dental School.

15. Defendant New York University is a private university offering undergraduate and graduate degree programs for tens of thousands of students.

16. NYU is a non-profit corporation duly organized and existing by virtue of the laws of the State of New York and is an institution of higher education with its principal place of business at 70 Washington Square South, New York, NY 10012.

17. Upon information and belief, NYU is a recipient of federal financial assistance, including federal student loans and other federal awards that helped to launch programs with NYU.

18. NYU agreed to receive federal funds in exchange for promising to refrain from discriminating against qualified individuals with disabilities, among other reasons.

19. The federal government has substantially performed its obligations under this contractual arrangement with NYU and was willing and able to perform its remaining obligations.

## JURISDICTION AND VENUE

20. The Court has jurisdiction over the subject matter of the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claim arising under the laws of the United States and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for Plaintiff's claims arising under state, local, and/or common law.

21. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant operates its business in this district and have sufficient contacts to be subject to personal jurisdiction in this District and because a substantial part of the acts or omissions giving rise to Plaintiff's claims occurred in this District.

## STATEMENT OF FACTS

22. Eugene Lee is a student with NYU's Dental School.

23. For two years, between April 6, 2023 to April 3, 2025, Mr. Lee was free to seat in the back row during exams. Specifically, students were allowed to choose their own seats (as long as they maintained two empty seats in between). Mr. Lee would routinely arrive two to three hours early to ensure he could sit in the back row, which helped manage his symptoms.

24. Mr. Lee has ADHD dyslexia, which are secondary to cerebellar-vestibular dysfunction. This physiological disorder in the inner ear, affecting the connection to the cerebellum, impacts his balance, cognitive function, and ability to manage stress during exams. As a result, he has been granted academic accommodations, including extra time and a reduced-distraction testing environment.

25. Mr. Lee's accommodations were established well before his time at NYU's Dental School, and other institutions he has attended have been more than accommodating in implementing these needs.

26. For the first time, however, on April 4, 2025, students received assigned seating for exams with NYU's Dental Schools. Each student was given a row number next to their names on the sign in sheet.

27. The new seating policy at NYU places an extreme strain on him, as it directly interferes with his ability to manage his disabilities effectively.

28. On April 5, 2025, Mr. Lee emailed Phillip Ferrigon of Defendant's Moses Center for Student Accessibility, requesting to sit in the back row during exams to accommodate his disabilities: "Every little noise behind me caused me to feel extremely anxious, rushed and more or less distracted me every time. Compared to when I was in the back row, I now have noises and

5

distractions coming at me from a 360 degree angle. It was extremely uncomfortable and distracting working like this."

29.     Over a week later, Mr. Ferrigon denied Mr. Lee's request, citing the Dental School's policies: "Seating arrangements within the proctored testing rooms are determined by the Dental School's policies and are designed to uphold academic integrity. These arrangements are managed independently of accommodation plans and may vary between exams. As such, specific seating preferences are not addressed through disability accommodations."

30.     The same day of this denial, Mr. Lee made clear that specific seating preferences are tied to disability accommodations: "I want to clarify that my request to sit in the last row is not based on personal preference—it is directly tied to my diagnosed ADHD and dyslexia. Being seated with others behind me significantly increases distraction and interferes with my ability to focus, even in a reduced-distraction testing environment. This is a functional limitation tied to my condition."

31.     On April 21, 2025, Defendant's Bridget Betts denied Mr. Lee's request again, once again citing the Dental School's policies: "According to the Dental School's seating policy, all students are expected to follow the established seating arrangements in order to maintain academic integrity within the DDS program. Any exceptions to this policy would represent a fundamental alteration to their testing procedures."

32.     Defendant has disclaimed any fundamental-alteration defense. At no point was an individualized evaluation performed, and no rationale was provided for how his request could fundamentally alter the testing process.

33.     Mr. Lee provided a letter from his clinician and signed a release on April 28 for his provider to be contacted.

6

34. At any rate, on April 30, 2025, Defendant's Bridget Betts emailed Mr. Lee: "Arriving a bit early to each exam may increase the opportunity for you to choose a preferred seat in your assigned row." Ms. Betts did not explain the difference between this instruction and a guaranteed seat in the back row.

35. Given Defendant's steadfast refusal, Mr. Lee explained to Ms. Betts the impact on him: "The new seating policy at NYU, however, places an extreme strain on me, as it directly interferes with my ability to manage my disabilities effectively."

36. This extreme strain is exacerbated as Mr. Lee continues to take exams without his reasonable accommodations.

37. On June 27, 2025, Mr. Lee provided a letter from his clinician dated June 23, 2025: "seating Eugene in the last row is a targeted clinical strategy designed to reduce the most disruptive visual input: movement and activity occurring in his peripheral and ear visual field. These are the areas most likely to trigger sensory overload and attentional dysregulation in individuals with Eugene's neurophysiological profile. . . . When seated in the last row, Eugene's field of view becomes predictably front-facing, minimizing unexpected stimuli from behind and to the sides."

38. Contrary to NYU's statements to the contrary, "[t]his is not a preference. It is a medically necessary adaptation for someone whose disability involves a compromised ability to neurologically suppress irrelevant stimuli in real time," thereby "reaffirm[ing] that last-row seating is a necessary, functionally linked accommodation to Eugene's disability—not a matter of convenience or generalized discomfort."

39. But NYU has rejected this medical judgment, stating: "back-row seating can result in greater challenges because there is more visual movement in front of you, potentially worsening

the impacts of ADHD. Therefore, the requested accommodation of back-row seating does not mitigate the barriers related to dyslexia or ADHD."

40. NYU's discrimination against Mr. Lee not only caused emotional distress but violated his civil rights.

41. Mr. Lee seeks any and all remedies available under contract law, including expectation-interest damages and specific performance.

42. Mr. Lee should receive expectation-interest damages to give him the benefit of his bargain by awarding him a sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contract been performed.

43. NYU has treated Mr. Lee differently than other dental students on the basis of his disabilities, providing him unequal access to its programs and services.

44. By discriminating against Mr. Lee on the basis of his disabilities, NYU denied him full and equal enjoyment of its programs and services.

45. NYU repeatedly and intentionally discriminated against Mr. Lee on the basis of his disabilities, acting with deliberate indifference in its failure to provide a reasonable accommodation.

46. NYU deliberately discriminated against Mr. Lee by failing to make reasonable modifications in its policies, practices, and procedures.

47. NYU knew or should have known of its obligations under city, state, and federal anti-discrimination laws to develop policies to promote compliance with these statutes and to provide reasonable accommodations.

48. Because of NYU's discrimination and failure to accommodate Mr. Lee's disabilities, Mr. Lee has suffered from embarrassment, violation of his civil rights, emotional

distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, and irreparable damage to his reputation and career prospects.

## CAUSES OF ACTION

### CLAIM I: Violations of Title III of the Americans with Disabilities Act

49. Plaintiff incorporates by reference all preceding paragraphs and realleges them in support of this claim.

50. At all times relevant to this action, Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, has been in full force and effect and has applied to Defendant's conduct.

51. At all times relevant to this action, Plaintiff has been a qualified individual with a disability within the meaning of the ADA. 42 U.S.C. § 12102(2).

52. Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

53. Title III of the ADA further provides that "[i]t shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(b)(1)(A)(ii).

54. Defendant discriminated against Plaintiff on the basis of his disability in violation of Title III of the ADA and its implementing regulations.

55. Defendant has failed to implement policies, procedures, and training of staff

necessary to ensure compliance with Title III of the ADA and its implementing regulations.

56.     Plaintiff is entitled to injunctive and declaratory relief and an award of attorney's fees, costs, and disbursements under the ADA. 42 U.S.C. § 12188(a)(1)–(2); 42 U.S.C. § 2000a-3.

### CLAIM II: Violations of Section 504 of the Rehabilitation Act

57.     Plaintiff repeats and re-alleges all preceding paragraphs in support of this claim.

58.     At all times relevant to this action, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, has been in full force and effect and has applied to Defendant's conduct.

59.     At all times relevant to this action, Plaintiff has been an individual with a disability within the meaning of the Rehabilitation Act. 29 U.S.C. § 705(9).

60.     At all times relevant to this action, Defendant has been a program or activity receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

61.     Pursuant to Section 504 of the Rehabilitation Act, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

62.     Defendant has discriminated and continues to discriminate against Plaintiff solely on the basis of his disability by denying him meaningful access to the services, programs, and benefits Defendant offers to other individuals, and by refusing equal treatment and access, in violation of Section 504 of the Rehabilitation Act. 29 U.S.C. § 794.

63.     The Rehabilitation Act explicitly authorizes the remedies available under 42 U.S.C. § 1981a. Specifically, 29 U.S.C. § 794a(a)(2) provides that "[t]he remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.) (and in subsection

(e)(3) of section 706 of such Act (42 U.S.C. 2000e–5), applied to claims of discrimination in compensation) shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title."

64. Accordingly, 29 U.S.C. § 794a(a)(2) provides that anyone bringing claims of discrimination against a recipient of federal funding may avail themselves of the remedies in 42 U.S.C. § 2000e-5(e)(3), which in turn states: "In addition to any relief authorized by section 1981a of this title . . . an aggrieved person may obtain [other] relief . . . ." 42 U.S.C. § 2000e-5(e)(3)(B) (emphasis added). And 42 U.S.C. § 1981a(b)(3) expressly permits compensatory damages for "emotional pain" and "mental anguish."

65. Plaintiff is also entitled to other forms of compensatory damages beyond emotional-distress damages because Defendant is subject to remedies traditionally available in suits for breach of contract. "Contract damages are ordinarily based on the injured party's expectation interest and are intended to give him the benefit of his bargain by awarding him a sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contract been performed." Restatement (Second) of Contracts § 347 cmt. A (Am. L. Inst. 1981). Here, as a student of NYU, Plaintiff expected that he would participate in NYU's programs and activities without incident.

66. Accordingly, Plaintiff had an expectation interest in the ability to fully participate in Defendant's educational services and denied Plaintiff this expectation interest by denying him full and equal enjoyment of its programs and services. Accordingly, Plaintiff should be entitled to compensatory damages under his expectation interest.

67. Thus, Plaintiff seeks injunctive relief, nominal damages, compensatory damages, and all remedies available under contract law as set forth above, and attorneys' fees, costs, and disbursements for the injuries and loss he sustained as a result of Defendant's discriminatory conduct and deliberate indifference as alleged under 29 U.S.C. §794a.

68. Plaintiff is therefore entitled to compensatory damages, injunctive relief, and an award of attorney's fees, costs, and disbursements, pursuant to 29 U.S.C. § 794(a).

### COUNT III: Violations of The New York State Human Rights Law

69. Plaintiff incorporates by reference all preceding paragraphs and realleges them in support of this claim.

70. At all times relevant to this action, New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290, *et seq.*, has been in full force and effect and has applied to Defendant's conduct.

71. At all times relevant to this action, Plaintiff has had a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques or a record of such an impairment or a condition regarded by others as such an impairment and is an individual within the meaning of the NYSHRL. N.Y. Exec. L. § 292(21).

72. Defendant owns, leases, and/or operates a place of public accommodation within the meaning of the NYSHRL. N.Y. Exec. L. § 292(9).

73. The NYSHRL provides that "[i]t shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, resort or amusement, because of . . . disability . . . directly or

indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof . . . or that the patronage or custom threat of any person of or purporting to . . . having a disability is unwelcome, objectionable or not acceptable, desired, or solicited." N.Y. Exec L. § 296(2)(a).

74. The NYSHRL defines "discriminatory practice" as including "a refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations." N.Y. Exec. Law § 296(2)(c)(i).

75. The NYSHRL further defines discriminatory practice as "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." N.Y. Exec. Law § 296(2)(c)(ii).

76. Defendant discriminated against Plaintiff on the basis of disability in violation of the NYSHRL, as set forth above.

77. Plaintiff is therefore entitled to monetary damages and injunctive relief pursuant to the NYSHRL, N.Y. Exec. Law. § 297(9).

**COUNT IV: Violations of the New York City Human Rights Law**

78. Plaintiff incorporates by reference all preceding paragraphs and realleges them in support of this claim.

79. At all times relevant to this action, the NYCHRL has been in full force and effect and has applied to Defendant's conduct.

80. At all times relevant to this action, Plaintiff has had substantial impairment to the major life activities of hearing and speaking and has therefore been a qualified individual with a disability within the meaning of N.Y.C. Admin. Code § 8-102(16)

81. At all times relevant to this action, Defendant has operated a public accommodation within the meaning of N.Y.C. Admin. Code § 8-102(9) and have been a covered entity within the meaning of N.Y.C. Admin. Code §§ 8-102(1) & (17).

82. Pursuant to N.Y.C. Admin. Code § 8-107(4), it shall be unlawful discrimination for "any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation because of . . . disability . . . of any person directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

83. Pursuant to N.Y.C. Admin. Code § 8-107(15)(a), a covered entity "shall make reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity."

84. The NYCHRL further requires that places of public accommodations engage in a "cooperative dialogue" with persons who are or may be entitled to an accommodation. N.Y.C. Admin. Code § 8-107(28). This obligation requires a public accommodation to "engage in good faith in a written or oral dialogue concerning the person's accommodation needs; potential accommodations that may address the person's accommodation needs, including alternatives to a requested accommodation; and the difficulties that such potential accommodations may pose for the covered entity." N.Y.C. Admin. Code § 8-102.

85. Plaintiff is an aggrieved person within the meaning of N.Y.C. Admin. Code § 8-502(a), which extends a cause of action and relief to "any person claiming to be aggrieved" by the discrimination of a person on the basis of his disability.

86. Defendant discriminated against Plaintiff on the basis of his disability by withholding the accommodations, advantages, facilities, or privileges of Defendant's services in violation of N.Y.C. Admin. Code § 8-107(4)(1)(a); by failing to effectively accommodate Plaintiff's disability in violation of N.Y.C. Admin. Code § 8-107(15)(a); and by failing to engage in a cooperative dialogue in violation of N.Y.C. Admin. Code § 8-107(28).

87. Without injunctive relief, there is a clear risk that Defendant's actions will recur with Plaintiff or other similarly situated individuals.

88. Plaintiff is entitled to damages even if the "only injury is the deprivation of a right granted or protected by [the statute]." N.Y.C. Admin. Code § 8-502(h)(2).

89. Plaintiff seeks an award of compensatory damages for the injuries and loss sustained as a result of Defendant's discriminatory conduct pursuant to N.Y.C. Admin. Code § 8-502(a).

90. Plaintiff also seeks an award of punitive damages to rectify and deter Defendant's discriminatory conduct pursuant to N.Y.C. Admin. Code § 8-502(a).

91. Plaintiff is further entitled to an award of attorney's fees, costs, and disbursements pursuant to N.Y.C. Admin. Code § 8-502(g).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Eugene Lee respectfully requests that this Court:

A. Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendant's policies, procedures, and practices have subjected Plaintiff to

unlawful discrimination in violation of Title III of the ADA, RA, the New York State Human Rights Law, and New York City Human Rights Law.

B.     Enjoin Defendant from implementing or enforcing any policy, procedure, or practice that discriminates against students with disabilities;

C.     Enjoin Defendant from engaging in any further acts of discrimination, harassment, or retaliation against Plaintiff or any other student with disabilities;

D.     Order Defendant:

   i.   to guarantee a back-row seat for all of Plaintiff's exams at the Dental School;

   ii.  to develop, implement, promulgate, and comply with a policy prohibiting future discrimination against Plaintiff or other disabled individuals;

   iii. to develop, implement, promulgate, and comply with a policy to ensure that Defendant will notify students with disabilities of their right to accommodation;

   iv.  to develop, implement, promulgate, and comply with a policy to ensure that Defendant will reasonably accommodate students with disabilities;

   v.   to train all its employees, staff, and other agents about the rights of students with disabilities under the ADA, RA, NYSHRL, and NYCHRL.

E.     Award to Plaintiff:

   i.   Compensatory damages pursuant to the RA, NYSHRL, and NYCHRL;

   ii.  Reasonable costs and attorneys' fees pursuant to the ADA, RA, NYSHRL, and NYCHRL;

   iii. Punitive damages under the NYCHRL;

    iv.    Interest on all amounts at the highest rates and from the earliest dates allowed by law; and

    v.    Any and all other relief that this Court finds necessary and appropriate.

Dated: August 4, 2025                                    Respectfully submitted,

                                                                  David John Hommel
                                                                  **EISENBERG & BAUM, LLP**
                                                                  24 Union Square East, PH
                                                                 New York, NY 10003
                                                                (212) 353-8700
                                                                dhommel@eandblaw.com
                                                                *Attorneys for Plaintiff*